# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WAYNE HOWARD EASLEY,
    Plaintiff

Case No. 1:11-cv-64

Spiegel, J.
Litkovitz, M.J.

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in

opposition (Doc. 15), and plaintiff's reply memorandum. (Doc. 16).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in January 2008, alleging disability since

August 7, 2006, due to Osgood Schlatter disease[1] and a back injury. Plaintiff's applications were

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a de novo hearing before ALJ Robert W. Flynn. Plaintiff and a vocational expert (VE) appeared

and testified at the ALJ hearing. On December 21, 2009, the ALJ issued a decision denying

plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was

denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1]Osgood-Schlatter disease is an overuse injury that occurs in the knee area of growing adolescents. It is
caused by inflammation of the tendon below the kneecap (patellar tendon) where it attaches to the shinbone (tibia).
Young adolescents who participate in certain sports, including soccer, gymnastics, basketball, and distance running,
are most at risk for this disease. *See http://orthoinfo.aaos.org/topic.cfm?topic=A00411.*

## II. Medical Evidence

On August 7, 2006, plaintiff injured his back at work while lifting a 50-75 pound bag. (Tr. 264-65). That day plaintiff presented to the emergency room at the Jewish Hospital with complaints of low back pain that radiated up his spine. (Tr. 275). Examination revealed left-sided paraspinous muscle tenderness to palpation in the lumbar region, but no spasm was noted. *Id*. Plaintiff's muscle strength was noted as 5/5 bilaterally and deep tendon reflexes were normal. (Tr. 275). No x-rays were taken. Plaintiff was diagnosed with low back pain and treated with ibuprofen and Flexeril for pain. (Tr. 275-76).

On August 18, 2006, plaintiff was examined by Richard Watson, M.D., pursuant to the workers' compensation claim associated with his back injury. Plaintiff reported severe pain and stated he was taking Vicodin and Valium.[1] Examination revealed normal deep tendon reflexes, some ratchety weakness which Dr. Watson opined may indicate real underlying weakness but that it was extremely hard to tell. Plaintiff was noted as complaining of pain even on testing of his foot and toe dorsiflexion. Plaintiff had normal range of motion in the hip and straight leg raising was negative. There was no radiation of pain down plaintiff's legs, numbness, or tingling. Dr. Watson reported that plaintiff "[h]ardly moved at all for back range of motion." Dr. Watson noted there were no MRIs and that he was unsure of what was wrong with plaintiff's back. Dr. Watson reported that he was unsure of plaintiff's functional limitations and whether plaintiff could do any work or not; he cited functional overlay as a possibility. Dr. Watson related plaintiff's report that he can sit and walk for only five minutes at a time, and that he can

---

[1] The record does not contain any treatment records from the date of plaintiff's injury, when he was given ibuprofen and Flexeril, to his examination with Dr. Watson. It appears from Dr. Watson's records that plaintiff received the Vicodin and Valium from his fiancé. (Tr. 279).

2

barely lift anything. Dr. Watson diagnosed plaintiff with a lumbosacral strain. Plaintiff was given prescriptions for Vicodin and Valium and scheduled for a return visit but he never returned for follow up treatment. (Tr. 277-79).

On August 28, 2006, plaintiff was examined by Mark Kehres, M.D. Dr. Kehres opined that plaintiff's history of Osgood-Schlatter's disease "might conceivably have some relevance" to his back pain. Plaintiff reported that he smoked 7 cigarettes per day and drank up to 28 alcoholic beverages per week. Examination revealed normal deep tendon reflexes except plaintiff reported tenderness to palpation over the posterior paravertebral musculature of the lumbar region. No tenderness to palpation over the spinous processes was noted. There was no associated spasm, swelling, or bruising. Range of motion maneuvers revealed moderate restriction at the waist. Plaintiff reported increased pain with forward flexion of the waist. Range of motion of the upper and lower extremities was within normal limits throughout. Motor strength of the upper and lower extremities was grossly within normal limits. The neurovascular examination of the extremities was intact, with positive distal pulses and no edema. Deep tendon reflexes were within normal limits throughout. Straight leg raise was positive for increased low back pain at 15 degrees on the left and 10 degrees on the right. Sensation was intact to light touch. Plaintiff was able to walk on heels and toes. Waddell's signs were positive for axial compression, passive range of motion, and the evidencing of pain behavior.[2] On extremities, plaintiff demonstrated full range of motion and normal motor strength throughout. The neurovascular exam was intact with positive peripheral pulses, and no edema was noted. Bony

---

[2] Positive Waddell's signs may indicate that there is a nonorganic or psychological basis for low back pain. *See* Craig E. Morris, *Low Back Syndromes: Integrated Clinical Management* 326-27 (2006), available at *http://books.google.com/books?id=EwKCuFti0YC&pg=PA327&dq=Nonorganic+Physical+Sign+in+Low+Back+ Pain.&hl=en&ei=JSnhTuqOGufX0QGdnMCvBw&sa=X&oi=book_result&ct=result&resnum=1&ved=0CEkQ6AE wAA#v=onepage&q=Nonorganic%20Physical%20Sign%20in%20Low%20Back%20Pain.&f=false.*

overgrowth associated with Osgood-Schlatter's disease of plaintiff's knees was also noted. Dr. Kehres diagnosed plaintiff with a lumbar strain and opined that he is able to work with the following temporary restrictions: no bending, squatting or kneeling, or lifting, pushing or pulling more than five pounds. (Tr. 265-70).

The record contains treatment notes from family physician, Victor Angel, D.O., dated from August 2006 through October 2008. (Tr. 331-64, 373-77). On August 31, 2006, Dr. Angel examined plaintiff and noted that plaintiff had limited range of lumbar motion. (Tr. 356). On September 1, 2006, Dr. Angel estimated that plaintiff could not return to work until September 30, 2006 due to an acute lumbar sprain/strain. (Tr. 357). An x-ray of plaintiff's spine taken on September 5, 2006 showed no bony abnormalities, fracture or dislocation. (Tr. 362). Plaintiff followed up via telephone with Dr. Angel on September 7, 2006 and he was noted as being physically and psychologically "good," and had positive check marks for his household function, daily activities, and quality of social life. (Tr. 355). Plaintiff reported insomnia and some nausea related to his medication, but otherwise no side effects. *Id*. A note indicates that Dr. Angel and plaintiff were awaiting approval for physical therapy. *Id*.

Plaintiff went to Dr. Angel's office for follow-up on September 18, 2006. Plaintiff was noted as being physically and psychologically "poor" and plaintiff reported that he did not feel he was able to return to full duty work yet. Plaintiff was given a prescription for Naprosyn in addition to hydrocodone. (Tr. 354).

Plaintiff attended seven physical therapy sessions from September 21, 2006 to October 12, 2006. (Tr. 280-90). At his September 21, 2006 evaluation, plaintiff reported pain and tightness in his back at an 8 out of 10. (Tr. 285). Examination showed that plaintiff had a

decreased range of motion and severe responses to palpation of his lower back muscles. (Tr. 286). Plaintiff's lower extremity sensations were normal and his strength was 4 to 4-/5. *Id.* October 10, 2006 progress notes contain similar findings with regard to plaintiff's range of motion and strength. (Tr. 283). Plaintiff reported that his pain had increased in intensity and spread to his side and hips. *Id.* Notes indicate that physical therapy was to continue unless otherwise directed. *Id.* At a follow-up with Dr. Angel that same day, plaintiff reported pain at an 8-9 with medication which was noted as an increase due to physical therapy. (Tr. 353).

On October 18, 2006, plaintiff presented to the emergency room at the Jewish Hospital with a nosebleed and back pain. (Tr. 272). Examination revealed that plaintiff had full muscle strength, a normal gait with some difficulty secondary to pain, and no acute distress. (Tr. 273). Plaintiff was diagnosed with anterior epistaxis secondary to straining for a bowel movement and directed to discontinue his Naprosyn for a couple of days. *Id.*

Plaintiff returned to Dr. Angel on October 30, 2006 and reported his emergency room visit. Naprosyn was stopped and plaintiff was put on a nasal mist to address nose bleeds during bowel movements. (Tr. 352). At a November 6, 2006 follow-up plaintiff was noted as being physically and psychologically "good." (Tr. 351). Plaintiff continued to complain of pain, reported that he was unable to carry out essential work functions, and stated that the hydrocodone was not helping with the pain. *Id.* Plaintiff stated that the physical therapy was increasing his pain and that he needed help putting on his shoes. Id. Plaintiff was given a prescription for Ativan to address anxiety. *Id.*

At the December 2006 follow-up visit with Dr. Angel plaintiff was noted as being physically and psychologically poor. (Tr. 350). Plaintiff reported increased pain when he

sneezes and a prescription for Tramadol was added. *Id.* When seen by Dr. Angel in January 2007, plaintiff continued reporting lower back pain made worse by physical therapy. (Tr. 349). He reported pain at an 8 out of 10 and Dr. Angel ordered an MRI. *Id.*

An MRI of plaintiff's lumbar spine was taken on January 9, 2007 and showed a shallow central disc bulge at L5-S1 with no nerve compression or displacement. (Tr. 359-60). There was some minor disc dessication at L4-L5, but all lumbar bodies were normal in height, configuration, and signal. *Id.*

At a January 29, 2007 follow-up with Dr. Angel, plaintiff was noted as being physically good and psychologically poor. (Tr. 348). Plaintiff reported pain at an 8 out of 10. *Id.*

Plaintiff's physical therapist (PT) generated a report on February 8, 2007 for disability purposes. The PT reported that plaintiff had some decreased range of motion and decreased strength at his initial evaluation. Further, at his final visit and assessment plaintiff's lumbar flexion was 32 degrees, extension was 10 degrees, lumbar side bending on the right was 14 degrees, left 12 degrees, rotation to the right was 50% of normal, rotation to the left was 25% of normal. His hamstring flexibility measured in a 90/90 position on the right was - 26 degrees of normal and left was -27 degrees of normal. He also had decreased strength throughout his lower extremities and abdominal musculature and grossly of his lower extremities was rated 4 out of 5 on a manual muscle test bilaterally. Also, his abdominal strength was rated at 3+ out of 5 per his manual muscle test. He did not present with any sensation abnormalities as it was within normal limits to both light touch and deep pressure throughout his lower extremity dermatomes. Also, the reflexes for the quadriceps and Achilles were within normal limits bilaterally. Plaintiff did not have any limitations doing fine or gross manipulation with his hands. The physical therapist

did note that plaintiff used a cane to ambulate and he did walk with a limp secondary to complaints of pain in his knees. Plaintiff reported to the physical therapist that he used the cane more for stability and balance secondary to feeling that his knees were weak and he did not want to take the risk of falling. Physical therapy resulted in a mild increase in his range of motion through plaintiff's lumbar spine but only to the point of a few degrees in each direction. Plaintiff had normal range of motion for his hips, knees, and ankles. (Tr. 281-82).

On February 23, 2007, non-examining state agency physician, Gerald Klyop, M.D., completed a physical residual functional capacity (RFC) assessment. Dr. Klyop opined that plaintiff could lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. Dr. Klyop assigned no postural or manipulative limitations and determined that plaintiff's subjective complaints of pain were supported in nature but not in severity. Dr. Klyop reported that he based his limitations on normal lumbar spine x-rays, full and symmetric lower extremity strength, intact sensation, normal gait, and the fact that plaintiff had some decreased range of motion in his back and he used a cane for balance, even though it was not medically necessary. (Tr. 291-98).

Plaintiff returned to Dr. Angel for follow-up on February 26, 2007. (Tr. 347). Plaintiff reported that his pain level was an 8 out of ten without medication, but with medications only a 5 out of 10. *Id*. Notes indicate that plaintiff still had pain but was able to sit pretty well. *Id*. Progress notes from the March 2007 visit indicate an increase in pain to a 9-10 without medication but plaintiff was noted as being physically and psychologically "good." (Tr. 346). Plaintiff was noted as having decreased range of motion, spasms, and an antalgic gait. *Id*. April

7

2007 progress notes indicate plaintiff was still experiencing pain at a 9 out of 10 and was physically and psychologically "poor." (Tr. 345). Dr. Angel ordered a chest x-ray. *Id*. The x-ray was taken April 23, 2007 and the results were normal. (Tr. 358). In May 2007, plaintiff reported severe pain, at 8 out of 10 without medication and 6 out of 10 with medication, and difficulty walking. (Tr. 343).

Plaintiff did not follow up with Dr. Angel again until September 25, 2007, at which point he reported pain at a 9 out of ten without medication, but he was noted as being physically and psychologically "good." (Tr. 342). Notes indicate that plaintiff denied being able to work, that his mother had taken control of his medication due to depression issues, and that plaintiff was requesting a functional capacity exam. *Id*. November 1, 2007 progress notes show plaintiff reporting pain at a 9 out of ten without medication and that he was physically "good" but psychologically "poor." (Tr. 341). Notes from November 29, 2007 indicate pain at an 8 out of ten, and that plaintiff had been depressed and having suicidal thoughts; however, he was noted as being physically and psychologically "good." (Tr. 340). December 2007 notes indicate that plaintiff reported an inability to sit or stand as it related to his ability to work and that he had pain with sneezing, coughing, or bowel movements. (Tr. 339). Plaintiff was started on Celexa for depression. *Id*. January, February, and March 2008 progress notes show continued pain at a 9 out of 10. (Tr. 336-38). On February 25, 2008, plaintiff requested a cane to assist with walking. (Tr. 337).

On February 29, 2008, Dr. Angel generated a letter for disability determination purposes. Dr. Angel opined that plaintiff had a lumbar strain with muscle spasm, depression, and anxiety. Dr. Angel noted that plaintiff was referred to Dr. Lehre, for physical therapy, and for a

psychological evaluation but that plaintiff did not follow through with these treatments possibly due to not having insurance or worker's compensation coverage. Dr. Angel opined that plaintiff was unable to lift anything heavier than 20 pounds, was able to bend, walk, or stoop for short periods of time, and was able to sit for longer periods. (Tr. 331-33).

On March 31, 2008, non-examining state agency physician, Walter Holbrook, M.D., completed a physical RFC assessment. Dr. Holbrook concluded plaintiff could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. Dr. Holbrook also opined that plaintiff should never climb ladders, ropes, or scaffolds, and could only occasionally stoop and crouch. Dr. Holbrook reported that his assessment was based on the MRI of the lumbar spine that showed a disc bulge at L5-S1, but no nerve compression, as well Dr. Angel's examination findings, including a letter that states plaintiff was unable to lift anything greater than 20 pounds but could bend, walk, and stoop for short periods of time, can sit for longer periods and did not state that the cane was necessary for walking. Dr. Holbrook found that while plaintiff requested a cane from Dr. Angel, the doctor did not state that a cane was necessary for ambulation. Dr. Holbrook opined that plaintiff's statements were partially credible as the objective evidence does not support his claims that he is unable to walk without a cane or lift anything over five pounds. (Tr. 323-30).

April 21, 2008 treatment notes from Dr. Angel demonstrate that plaintiff reported pain at a 9 of 10 without medication and a 7 of 10 with medication. (Tr. 335). Plaintiff reported being able to sit and stand for ten minutes at a time and that he was most comfortable reclining. *Id.* A May 2008 phone call summary indicates that the office manager at Dr. Angel's office stated that

9

plaintiff's cane was medically necessary for him to ambulate. (Tr. 334). May 19, 2008 notes

show similar pain levels but note that plaintiff sleeps on a couch and sleeps poorly. (Tr. 377).

On May 23, 2008, a third physical RFC assessment was completed by non-examining

state agency physician Maria Congbalay, M.D. Dr. Congbalay opined that plaintiff could lift,

carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk

at least two hours in an eight-hour workday; and sit about six hours in an eight-hour workday.

Dr. Congbalay based these limitations on the January 2007 MRI, Dr. Angel's findings that

plaintiff had increased muscle spasm, decreased range of motion, and that the cane was

medically necessary. Dr. Congbalay additionally assigned the same postural limitations as Dr.

Holbrooke, that plaintiff should never climb ladders, ropes, or scaffolds, but could occasionally

climb ramps and stairs and balance, stoop, kneel, crouch, and crawl. (Tr. 365-72).

August 2008 progress notes from Dr. Angel include plaintiff's reports that he is unable to

sit, stand, or walk for more than ten minutes, has difficulty sleeping, and is unable to lift, push, or

pull more than five pounds. (Tr. 376). Dr. Angel noted that plaintiff had an antalgic gait and

used a cane to assist his walking. *Id*. September and October 2008 progress notes document

similar subjective reports of plaintiff's pain and physical limitations. (Tr. 374-75).

On June 16, 2009, plaintiff was examined by Eric Luessen, M.D. Plaintiff reported that

he had not seen a physician for approximately the last 6 months because "his most recent doctor

will not communicate with his attorney." Dr. Luessen noted plaintiff's subjective reports of pain

and reviewed his medical records, including the MRI. Plaintiff reported that he had not had any

medication for the past six months. Examination of the lower back and thoracic area revealed

that plaintiff had diffuse, but not focal, tenderness. No muscle spasm or deformity was noted.

10

Straight leg raising was negative for pain radiating below the knee and plaintiff's gait was normal. Lumbar flexion was approximately 45 degrees to the point of discomfort. Plaintiff could heel-toe walk, squat partially, and exhibited full strength and reflexes in the lower extremities. Dr. Luessen diagnosed plaintiff with a lumbar strain, chronic low back pain and probable chronic pain syndrome. Dr. Luessen recommended against restarting narcotics medications and referred plaintiff to a pain specialist. Dr. Luessen opined that plaintiff should not do any heavy lifting and restricted plaintiff from bending, lifting more than five pounds, or pushing or pulling more than 10 pounds. There is no notation that plaintiff was using or required a cane to walk and there are no other treatment notes in the record from Dr. Luessen. (Tr. 379-80).

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her

11

physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since August 7, 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, arthritis - bilateral knees, history of Osgood Schlatter's Disease, depression, and anxiety (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). Specifically, he can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk a total of 6 hours in an 8-hour workday with normal breaks, and sit for a total of 6 hours in an 8-hour workday with normal breaks. He can only occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl. He should never climb ladders, ropes or scaffolds. He should avoid concentrated exposure to extreme cold and all exposure to unprotected heights and moving machinery. Due to the claimant's mental impairments, he is limited to work consisting of simple, routine, and repetitive tasks; in a low stress environment defined as free of fast paced production requirements; involving only simple, work-related decision; and with few, if any, work place changes. He is also limited to only occasional contact with the public or coworkers.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on December 29, 1958 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 7, 2006 through the date of this decision (20 C.F.R.404.1520(g) and 416.920(g)).

(Tr. 11-19).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

14

*See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in determining plaintiff's RFC in light of the medical opinions of record; and (2) the ALJ erred in discounting plaintiff's testimony.

#### 1. The ALJ did not err in formulating plaintiff's RFC and in assessing the weight to afford the opinions of Dr. Angel, Dr. Luessen, and Dr. Congbalay.

Plaintiff contends that the ALJ erred in formulating plaintiff's RFC by finding that he was capable of performing a range of light work whereas plaintiff's testimony and the limitations put forth by Dr. Angel, Dr. Luessen, and Dr. Congbalay support a finding that plaintiff is capable of performing, at most, sedentary work. Plaintiff argues that the ALJ erred by not adopting Dr. Angel's opinion that plaintiff is limited to sitting/standing/walking for only ten minutes at a time, Dr. Luessen's opinion that plaintiff is limited to lifting no more than five pounds and pushing or pulling no more than ten pounds, and Dr. Congbalay's opinion that plaintiff is limited to standing or walking to two hours in an eight-hour work day. Essentially, plaintiff argues that the ALJ did not afford sufficient weight to these medical opinions or to his own testimony which support a finding that plaintiff is limited to sedentary work and is consequently disabled.[3]

In his decision, the ALJ addressed the opinions of Dr. Angel and Dr. Luessen and accorded them "some weight." The ALJ noted that both doctors' opinions relied heavily on

---

[3] As plaintiff's age category is defined as closely approaching advanced age, a limitation to sedentary work directs a finding that plaintiff is disabled. *See* 20 C.F.R. Part 404, Appendix 2, Rules 201.12 and 201.14.

15

plaintiff's subjective reports, which the ALJ ultimately found to be less than fully credible. The ALJ determined that Dr. Luessen's opinion regarding plaintiff's lifting and pushing/pulling limitations were contradicted by diagnostic imaging showing only a disc desiccation and bulging without any cord compression. Further, the ALJ identified that Dr. Angel's opinion that plaintiff was severely limited and could sit/stand/walk for only ten minutes at a time was conclusory and unsupported by the treatment history. (Tr. 17). The ALJ's determination to afford "some weight" to these opinions is supported by substantial evidence.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*,

16

964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

"A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' 20 C.F.R. § 404.1502. A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.' *Id.*" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 404.1527(d). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §

17

404.1527(d)(3)-(6); *Wilson*, 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(d)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 404.1527(d). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

Here, the ALJ gave "some weight" to Dr. Angel's notations that plaintiff was limited to walking, sitting, or standing for only ten minutes at a time because it was unsubstantiated by Dr. Angel's treatment notes and appeared largely based on plaintiff's subjective complaints. (Tr. 17). The ALJ further noted that Dr. Angel's treatment was conservative, primarily consisting of pain medication and remote physical therapy. *Id*. Although Dr. Angel was plaintiff's treating physician, the ALJ was not required to afford more weight to his opinion due to the lack of clinical or objective medical evidence supporting the opinion. Aside from plaintiff's subjective reports, there is no medical data or opinion in the record that supports limiting plaintiff to sitting, walking, or standing for only ten minutes at a time. *See* 20 C.F.R. §§ 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by claimant's statement of symptoms); 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal citations and quotations omitted).

18

The clinical evidence of record consists primarily of "Progress Notes" from plaintiff's treatment with Dr. Angel. Plaintiff treated with Dr. Angel from August 2006 to October 2008. *See* Tr. 331-64, 373-77. These "Progress Notes" provide little, if any, objective findings. Rather, they appear to be notations regarding plaintiff's subjective reports of pain and physical abilities. The Court notes that the record does not demonstrate that the ten-minute limitations were prescribed by Dr. Angel. Upon a review of the entirety of the "Progress Notes," these limitations are noted in the top half of a form alongside plaintiff's other subjective reports, such as the level of pain he experienced and his sleeping habits. *See* Tr. 374-77. Thus, the ALJ reasonably determined that these notations reflected plaintiff's subjective complaints and not any physical limitations imposed by Dr. Angel.

The only medical evidence that unquestionably contains Dr. Angel's own opinion is his February 2008 letter in which he opined that plaintiff could not lift more than 20 pounds, was able to bend, walk, and stoop for short periods of time, and sit for longer periods. (Tr. 331-33). This opinion starkly contrasts with the information in the "Progress Notes" regarding plaintiff's ten-minute limitations and plaintiff has pointed to no evidence in the interim six month period to explain the extreme reduction in plaintiff's physical functional ability. (Tr. 335, 374-77). There is no indication in the record that plaintiff's physical condition deteriorated after February 2008 to justify the ten-minute limitations set forth in the progress notes. There is no evidence of contemporaneous physical examinations or laboratory findings supporting these more extreme limitations, and the progress notes reflect many of the same symptoms and findings both pre- and post-April 2008 when the ten-minute limitations were first noted. The ALJ was not bound by the

19

more restrictive ten-minute limitations reflected in the progress notes in the absence of sufficient clinical and objective findings to support the more extreme limitations. *See Shelman*, 821 F.2d at 320-21. *See also Walters*, 127 F.3d at 530.

Further, the objective evidence of record does not substantiate the limitations documented in the "Progress Notes." The September 2006 x-ray of plaintiff's spine was normal and the January 9, 2007 MRI noted a disc bulge at L5-S1 but no nerve compression or displacement and some minor disc desiccation at L4-L5 but lumbar bodies were normal. (Tr. 362; 359-60). Lastly, Dr. Angel's records and reports with regard to plaintiff's use of a cane are internally inconsistent. The February 25, 2008 "Progress Note" provides, "[Patient] has Antalgic gait . . . so he requested for a cane." (Tr. 337). However, pursuant to a May 6, 2008 phone call from the Commissioner, Dr. Angel's office manager stated "that the cane prescribed by Dr. Angel is medically necessary for the patient to ambulate." (Tr. 334).

Moreover, to the extent that Dr. Angel's notes contain the notation that plaintiff is "disabled," this opinion is not entitled to any deference. *See* Tr. 339-40, 342, 348 (on blank space next to "Occupation," several "Progress Notes" state "Disabled"); Tr. 374-77 (on blank space next to "Ability to work" these progress notes state "Disabled" or "No"). The ALJ is responsible for determining whether plaintiff meets the statutory definition of disability based on the medical and vocational evidence in the record. *See* 20 C.F.R. § 404.1527(e)(1). A treating physician's "broad conclusory formulations, regarding the ultimate issue which must be decided by the [Commissioner], are not determinative of whether or not an individual is under a disability." *Kirk v. Sec'y of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981).

Lastly, the ALJ noted Dr. Angel's conservative treatment of plaintiff as a reason for discounting Dr. Angel's medical opinion. As the ALJ noted, Dr. Angel prescribed only pain medication and some remote physical therapy. (Tr. 17). Dr. Angel reported there were no plans for any surgical or clinical intervention in treating plaintiff. (Tr. 332). Nor did Dr. Angel order any objective tests or diagnostic imaging subsequent to the January 2007 MRI. (Tr. 17).

The ALJ properly noted the subjective nature of Dr. Angel's treatment records, the lack of substantiating objective evidence, the internal contradictions, and plaintiff's conservative treatment in determining to afford the severe ten-minute limitations only "some weight." *See* 20 C.F.R. § 404.1527(d); *Harris*, 756 F.2d 431 (6th Cir. 1985). The Court notes that even where the evidence arguably supports the conclusion the plaintiff seeks, the reviewing court must uphold the decision of the ALJ if the evidence could reasonably support the conclusions reached by the ALJ. *Her v. Comm'r v. Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The ALJ's determination to give less than controlling weight to Dr. Angel's purported limitations is substantially supported and should be affirmed.

With regard to Dr. Luessen, the ALJ ascribed "some weight" to his medical opinion. While Dr. Luessen opined that plaintiff is limited to lifting no more than five pounds, pushing/pulling ten pounds, and no bending, the ALJ discounted this assessment as it was chiefly based on plaintiff's subjective reports of pain. As discussed *infra*, the ALJ reasonably determined that plaintiff's subjective reports of pain are not fully credible; accordingly, Dr. Luessen's opinion was not given more weight. The ALJ's finding in this regard is substantially supported by the evidence of record.

21

Plaintiff argues that Dr. Luessen's opinion should be afforded controlling weight as a treating physician, or at least more weight than the state agency physicians. Yet, the record contains only one treatment record from Dr. Luessen from June 16, 2009. (Tr. 379-80). This represents plaintiff's initial visit and, consequently, Dr. Luessen is properly considered a one-time examiner and not a treating physician. *See* 20 C.F.R. § 404.1527(d). Dr. Luessen's opinion was not based on a history of treatment and examination of plaintiff which would place him in a better position vis-à-vis the other physicians of record to assess the severity of and limitations surrounding plaintiff's impairments. *Barker*, 40 F.3d at 794. Rather, his opinion was primarily based on a one-time evaluation, plaintiff's subjective complaints, and a review of plaintiff's MRI, and other unidentified medical records. Further, the five pound lifting and ten pound push/pull limitations assigned by Dr. Luessen are contradicted by other substantial evidence of record. *See* Tr. 292 (Dr. Klyop opined that plaintiff was able to lift 50 pounds occasionally, 25 pounds frequently, and had no restrictions on his ability to push/pull); Tr. 333 (in May 2008 Dr. Angel opined that plaintiff could lift up to 20 pounds); Tr. 324 (Dr. Holbrook opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds and had no limitations on his ability to push/pull); and Tr. 366 (Dr. Congbalay opined that plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds and had no limitations on his push/pull ability).

The weight given to a medical opinion takes into account the length and nature of the treatment relationship, its supportability, and its consistency with other evidence in the record. 20 C.F.R. § 404.1527(d)(2)(i)-v(ii), (4). Here, as noted by the ALJ, Dr. Luessen's opinion is based on a one-time examination of plaintiff and a review of medical records. Further, Dr.

22

Luessen's lifting and pushing restrictions are contradicted by other substantial evidence in the record and are not supported by any clinical testing or examination, supporting the ALJ's conclusion that those restrictions are largely based on plaintiff's subjective reports. Indeed, Dr. Luessen's findings on examination were largely normal. (Tr. 380) ("Examination of the lower back and thoracic area reveals diffuse muscular tenderness throughout. There is no focal tenderness. There is no muscle spasm or deformity noted. Straight leg raising is negative for pain radiating below the knee . . . Gait is normal . . . The patient can heel walk, toe walk, and has good extensor hallucis longus strength. Deep tendon reflexes are symmetrical and equal in the lower extremities. There is full strength in the lower extremities as he can heel walk, toe walk and squat partially.") Accordingly, the ALJ's determination to afford only "some weight" to Dr. Luessen's opinion is substantially supported and should be affirmed.

Lastly, plaintiff argues that the ALJ improperly afforded only "some weight" to Dr. Congbalay's opinion that plaintiff is limited to standing or walking for only two hours in an eight-hour work day. The ALJ largely adopted Dr. Congbalay's opinion regarding plaintiff's RFC, but rejected the two-hour standing/walking limitation noting that she was unable to review evidence received at the hearing level before completing her assessment. The evidence that Dr. Congbalay was not able to review included Dr. Angel's treatment notes from May to October 2008 and Dr. Luessen's June 2009 examination records.

"Generally speaking, an ALJ must consider in accordance with the regulations the opinion evidence provided by non-examining state agency physicians. 20 C.F.R. §§ 404.1527(f), 416.927(f). Unless the [plaintiff's] treating physician is given controlling weight, the ALJ also

23

must explain in the written decision the weight given to the opinions of the state agency physicians; however, the ALJ is not bound by those opinions." *Barker v. Astrue*, No. 5:09cv1171, 2010 WL 2710520, at *5 (N.D. Ohio July 7, 2010).

Here, Dr. Congbalay's two-hour standing and walking limitation is not supported by the record as a whole and is contradicted by subsequent medical evidence. Dr. Congbalay noted that she based her opinion on the January 2007 MRI and Dr. Angel's notes that plaintiff had muscle spasms, decreased range of motion, antalgic gait, and medically required a cane as of February 2008. (Tr. 366). As discussed above, the record does not support Dr. Congbalay's interpretation of Dr. Angel's treatment notes as they clearly indicate that in February 2008 plaintiff requested a cane, not that it was deemed medically necessary. Further, the subsequent clinical evidence of record contradicts this limitation.[4] Dr. Luessen's June 2009 examination revealed that plaintiff had no muscle spasms, could heel-toe walk, had symmetrical and equal deep tendon reflexes in the lower extremities, had full strength in his legs, and had a normal gait. (Tr. 380). There was no mention in Dr. Luessen's examination that plaintiff walked with or required the use of a cane.

The ALJ's decision explains that he gave only "some weight" to Dr. Congbalay's opinion in light of her inability to review medical evidence that was received at the hearing level. This medical evidence contradicted her opinion that plaintiff was limited to standing and/or walking for only two hours in an eight-hour work day. Further, the record as a whole does not support Dr. Congbalay's restrictions. The conflict in the medical evidence regarding whether plaintiff

---

[4] The Court notes that October 2008 records from Dr. Angel state "Pt has to use a cane to walk," however it is unclear whether this is a medical opinion or plaintiff's subjective report. (Tr. 374). Further, the records from May to September 2008 do not mention the use of a cane. (Tr. 375-77).

24

simply requested or medically requires the use of a cane has been determined by the ALJ and his

determination is supported by substantial evidence. Accordingly, the Court should not disturb

his finding. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v.

Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028

(6th Cir. 1990).

In formulating plaintiff's RFC, the ALJ determined that plaintiff was able to lift and/or

carry 20 pounds occasionally and 10 pounds frequently. This finding is supported by the

opinions of Dr. Watson, Dr. Klyop, Dr. Holbrook, Dr. Angel, and Dr. Congbalay (Tr. 279, 292,

324, 333, 366). The ALJ found that plaintiff could stand, walk, and/or sit for a total of six hours

in an eight-hour workday, a finding which is supported by the evidence of record. *See* Tr. 266

(Dr. Kehres placed no restriction on plaintiff's standing/walking/sitting); Tr. 292 (Dr. Klyop

opined plaintiff could stand, walk, or sit for six hours in an eight-hour day); and Tr. 324 (Dr.

Holbrooke determined plaintiff was capable of standing, walking, or sitting for six hours in

eight-hour workday). While other evidence of record conflicts with these findings, the ALJ's

resolution of the conflict and determination of the weight to afford the medical opinions of

record are supported by substantial evidence. Accordingly, the RFC determination should be

affirmed and plaintiff's first assignment of error should be overruled.

## 2. The ALJ's credibility determination is substantially supported.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of

the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's

25

credibility finding is entitled to deference and should not be discarded lightly. *Buxton*, 246 F.3d at 773; *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). In determining credibility, the ALJ may consider the claimant's testimony of limitations in light of other evidence of the claimant's ability to perform other tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds. *Heston v. Comm'r*, 245 F.3d 528, 536 (6th Cir. 2001).

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk,* 667 F.2d at 538. In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether

26

the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky*, 35 F.3d at 1038-39; *Jones v. Sec'y of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella*, 708 F.2d at 1059. In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

Plaintiff contends that the ALJ erred in finding plaintiff "not fully credible" arguing that his testimony regarding his pain and physical limitations is supported by the evaluations of Dr.

27

Angel and Dr. Luessen.[5] Further, plaintiff asserts that the cited inconsistencies in his testimony

concern immaterial "collateral issues" which the ALJ should not have relied on to discount the

credibility of the testimony regarding his pain and physical limitations. Plaintiff's arguments are

not well-taken.

In determining that plaintiff's subjective complaints are "not fully credible," the ALJ

cited to seven distinct instances where plaintiff's testimony was contradicted by other evidence

of record. The ALJ's decision detailed the following inconsistencies: (1) plaintiff testified that

he lived with his mother since he injured his back in August 2006 (Tr. 37) but in March 2008

plaintiff reported to Dr. Nelson that he was currently living with his girlfriend (Tr. 300); (2)

plaintiff testified that since the injury he had not seen friends regularly and mostly stayed at

home with his mother watching television (Tr. 45) but he told Dr. Nelson he had been dating his

girlfriend for approximately a year (Tr. 300); (3) plaintiff testified that he used a cane but denied

using any other assistive device (Tr. 41) though in a Function Report he reported using a

wheelchair (Tr. 222); (4) plaintiff testified that he needed a cane to walk and stand (Tr. 40-41)

but at the June 2009 examination, Dr. Luessing reported that plaintiff had full motor strength and

normal heel-toe walking, and that he walked with a normal gait (Tr. 380); (5) plaintiff testified

that he never took illegal or illicit drugs (Tr. 52) but he reported to Dr. Watson that he took his

fiancé's Vicodin and Valium (Tr. 279); (6) plaintiff testified that he had worked the majority of

his life, including working at McDonald's for two years during high school and doing warehouse

_____

[5] Plaintiff refers to both doctors as treating physicians. However, as noted *supra*, Dr. Luessen examined plaintiff only once and, thus, is not considered a treating physician. *See* 20 C.F.R. § 416.927(d).

and shipping work after high school (Tr. 36) but his earnings record did not substantiate plaintiff's asserted work history (Tr. 169); and (7) plaintiff testified that, aside from the claim related to the August 2006 injury, he had no prior Workers' Compensation claims (Tr. 34) but treatment notes indicate that plaintiff had a prior Workers' Compensation claim in 1992. (Tr. 253).

In light of the multiple inconsistencies in plaintiff's testimony with medical and other evidence of record, the ALJ's credibility determination is substantially supported. *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 546 (6th Cir. 2002) (affirming ALJ's credibility determination where plaintiff's testimony conflicted with medical evidence); *Sass v. Astrue*, No. 4:09cv2732, 2011 WL 488712, at *10 (N.D. Ohio Feb. 7, 2011) (affirming ALJ's credibility determination where inconsistencies between plaintiff's testimony and evidence of record "cast doubt on the veracity of [p]laintiff's testimony and imply that [p]laintiff may not be as restricted as she purports."). *See also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). The Court acknowledges, as argued by plaintiff, that his inconsistent statements regarding living only with his mother and dating do not necessarily indicate that plaintiff left the house more frequently or engaged in more activities. However, these inconsistencies do affect his overall credibility and even assuming, *arguendo*, that the ALJ mischaracterized this testimony, there remains substantial evidence supporting the ALJ's credibility determination, making any error harmless. *See Coleman v. Astrue*, No. 2:09-36, 2010 WL 4094299, at *17 (M.D. Tenn. Oct. 18, 2010).

29

Moreover, in discounting the plaintiff's credibility the ALJ noted that plaintiff's subjective complaints of pain were not well supported by the medical evidence of record. (Tr. 16). Plaintiff testified that: he was unable to lift, push or pull more than five pounds; he was directed by Dr. Angel to use a cane which he uses to help with walking and balance; and he is only able to sit, stand, or walk for ten minutes. (Tr. 35, 40-42). However, as identified by the ALJ the objective medical evidence does not support these statements.

With regard to the use of a cane, the February 25, 2008 treatment notes from Dr. Angel demonstrate that Dr. Angel did not direct plaintiff to use a cane, but rather plaintiff requested a cane to assist with walking.[6] (Tr. 337). Further, Dr. Angel opined in February 2008 that plaintiff was able to lift up to twenty pounds, bend, walk, or stoop for short periods of time, and sit for longer periods. (Tr. 331-33). The three non-examining agency doctors all opined that plaintiff's physical abilities were significantly greater than what he reported or testified. *See* Tr. 291-98 (Dr. Klyop opined that plaintiff could lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently and could stand, walk, and/or sit six hours in an eight-hour workday); Tr. 323-30 (Dr. Holbrook opined that plaintiff could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently and could stand, walk, and/or sit six hours in an eight-hour workday); Tr. 365-72 (Dr. Congbalay opined that plaintiff could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently and could sit six hours in an eight-hour workday and stand or walk two hours in an eight-hour workday). While Dr. Luessen's opinion

---

[6] Though not cited by the ALJ, a December 20, 2006 Report of Contact form indicates that, at that time, plaintiff reported he was using the cane without a prescription from a doctor. (Tr. 191).

corresponded with plaintiff's testimony, as discussed above and cited by the ALJ, the opinion appears largely based on plaintiff's subjective complaints, the associated examination revealed largely normal findings, and conservative treatment was recommended. (Tr. 379-80). Lastly, the objective evidence does not support plaintiff's subjective complaints of pain. The 2006 x-ray revealed normal findings, Tr. 362, and the 2007 MRI demonstrated only a shallow disc bulge at L5-S1 with no nerve compression or displacement and minor disc desiccation at L4-L5. (Tr. 356-60).

Here, the ALJ considered the relevant evidence of record and the requisite factors as set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c) and Social Security Ruling 96-7p such as plaintiff's daily activities, his treatment history, the medication he takes, and his statements regarding the level of pain he experiences and his functional limitations. (Tr. 14-15). Contrary to plaintiff's contentions, the ALJ properly considered plaintiff's subjective complaints in light of the evidence of record and determined that, based on inconsistencies between plaintiff's testimony, the medical evidence, and other evidence of record, that plaintiff was less than fully credible. Though there is some medical evidence supporting plaintiff's testimony, as the Commissioner has properly considered the evidence and identified inconsistencies in plaintiff's testimony, his credibility determination is substantially supported and should not be disturbed by the Court. *Kinsella*, 708 F.2d 1059. Plaintiff's second assignment of error should be overruled.

31

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 1/5/2012

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WAYNE HOWARD EASLEY,　　　　　　　　Case No. 1:11-cv-64
　　　Plaintiff　　　　　　　　　　　　　　Spiegel, J.
　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　　　vs

COMMISSIONER OF　　　　　　　　　　**REPORT AND**
SOCIAL SECURITY,　　　　　　　　　　**RECOMMENDATION**
　　　Defendant

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).